IN RE ESTATE OF JOHN T. FITZGERALD.

No. 43798.

MARCH 16, 1937.

Hall, Lupton & Maurer for appellant.

Senneff, Bliss & Senneff, Bert B. Welty, B. M. Soper, F. H. Lounsberry, and Paul B. Welty, for appellees.

ANDERSON, J.—As the preliminary statement indicates, this is a controversy over the estate of an adopted son. The estate is claimed by the collateral heirs of the adopting parents and also by the natural mother of the adopted son. The facts involved are gathered wholly from the pleadings as the case was disposed of below on the pleadings and rulings on demurrers. The conceded facts briefly are as follows:

The natural mother, now known as Norah Shaw, intervener, was married to one Tripp in Polk County, Iowa, in July, 1908, and to them was born a son in 1911. The marriage of the natural parents was dissolved and the mother remarried. In June, 1913, the child, known at that time as John R. Tripp, was legally adopted by his grandparents and but a few days later in the same month in a proceeding in the juvenile court in Polk County the child was declared a dependent and delinquent child and was placed in the juvenile home. In August, 1915, the child was legally adopted by Lawrence and Ellen Fitzgerald, husband and wife, of Nevada, Story County, Iowa, with whom he made his home until the death of his adopted parents. The adopting parents both died intestate leaving as their sole and only direct heir at law the adopted son known in this record as John T. Fitzgerald. The adopted son died in May, 1935, intestate, unmarried and without issue. Norah Shaw, intervener, being his only living and surviving parent. He left an estate of considerable proportion and petitions of intervention were filed by the collateral heirs of the predeceased mother by adoption, and also by the collateral heirs of the predeceased father by adoption. These petitions of intervention claiming that each set of collateral heirs were entitled to one-half of the estate of the adopted son. Later the natural mother also filed a petition of intervention claiming that she was the sole surviving natural parent of the adopted son and asked that she be adjudged to be the sole and only heir at law of the decedent, John T. Fitzgerald. Answers were filed to the petition of intervention by each group of collateral heirs denying the right of the natural mother as an heir to her son's estate and claiming that the heirs of the deceased adopting parents were the only heirs of the deceased adopted son and were entitled to the entire estate. To these answers the natural mother, Norah Shaw, filed demurrers directly raising the question as to the right of the collateral heirs of the predeceased adopting parents to inherit. The demurrers were submitted to the court and overruled. Norah Shaw, intervener, electing to stand on the order overruling her demurrers, an order was entered by the trial court ordering a distribution of the net proceeds of the estate to the various collateral heirs of the parents by adoption and denying to the natural mother the right to participate in any way in the property of the estate. From such order this appeal is prosecuted.

As has been indicated, the determination of the question involved in the appeal has to do with the construction of certain statutory provisions, and that the question may be the better understood, we will recite the history and quote the various pertinent legislative enactments.

In the Code of 1873 in the chapter relative to adoption we find the following section:

Section 2310, Code of 1873. "Upon the execution, acknowledgment, and filing for record of such instrument [articles of adoption], the rights, duties, and relations between the parent and child by adoption, shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth."

Section 3253 of the Code of 1897 contained the same provisions as the first quoted section except that the words "including the right of inheritance" were omitted from the latter section. However, the 29th General Assembly, chapter 132, supplied this omission by amending the section and adding thereto the following: "and the right of inheritance from each other shall be the same as between parent and children born in lawful wedlock."

Section 3253 as amended, as above indicated, was incorporated in the Code of 1924, and appears therein as section 10500. The last named section was repealed however by the 42d General Assembly and what is now known as section 10501 of the present Code was enacted.

Section 10501-b6 provides: "Status of the adopted child. Upon the entering of such decree, the rights, duties and relationships between the child and parent by adoption shall be the same that exist between parents and child by lawful birth and the right of inheritance from each other shall be the same as between parent and children born in lawful wedlock."

Sections 1408 to 1411, inclusive, of the Code of 1851, provided for the descent and distribution of the property of an intestate and these provisions were incorporated in the revision of 1860.

Section 2497 of the Revision provided: "If both parents be dead, the portion which would have fallen to their share or to either of them by the above rules, shall be disposed of in the

same manner as if they or either of them had outlived the intestate and died in the possession and ownership of the portion thus falling to their share or to either of them, and so on, through ascending ancestors and their issue."

The last-quoted section was incorporated in the Code of 1873 as section 2457 in exactly the same language, and was also carried forward and formed a part of the Code of 1897 and is there designated as section 3381.

Sections 12016, 12017, 12024 and 12025 of the 1924 and subsequent Codes incorporate the substance of the preceding quoted sections.

Section 12016 provides for the descent of the estate in equal shares to the children of an intestate.

Section 12017 provides for the distribution of intestate's property where there is no issue, and also provides that if the decedent, without issue, leave no spouse, the whole of the estate shall go to the parents with the further provision: "In case of an adopted child, the parents by adoption shall inherit as if they were the natural parents."

Section 12025 provides: "If both parents are dead, the portion which would have fallen to their share by the above rules shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, and so on, through ascending ancestors and their issue."

Section 12027 provides: "Heirs of parents by adoption. If the adopted parent or parents, if more than one, be dead, the portion which would have gone to such parent or parents had they or either of them survived the intestate, shall be disposed of in the same manner as if such parent or parents had outlived the intestate and died in possession of such share, and so on through their ascending ancestors."

Section 12028 provides: "Natural parents. If heirs are not thus found, the portions thus uninherited shall go to the natural parents of the intestate, and in case of their death then to their heirs under the ordinary rules of descent."

It is under the provisions of sections 12027 and 12028 that the intervener, Norah Shaw, claims the right to inherit this estate.

Before attempting a construction of these particular sections, however, we must have in mind section 10501-b6, which provides that the right of inheritance by adopting parents from adopted son and adopted son from adopting parents shall be "the same as between parents and children born in lawful wedlock." And also section 12017 which provides, "In case of an adopted child, the parents by adoption shall inherit as if they were the natural parents."

It is conceded by the appellant that if she is not entitled to the estate of her deceased son it should pass to the appellees, and the single question that we must determine is whether the appellant as the natural mother of the intestate should inherit his entire estate or whether the other interveners, appellees, as next of kin of his adopting parents are the heirs of the intestate and should inherit the property left by him.

█▌█ Adoption was unknown to the common law. It is strictly a creature of the statute. Morris v. Trotter, 202 Iowa 232, 210 N. W. 131; Shaw v. Scott, 217 Iowa 1259, 252 N. W. 237; Calhoun v. Bryant, 28 S. D. 266, 133 N. W. 266; In re Enyart's Estate, 116 Neb. 450, 218 N. W. 89, 91.

█▌█ So also, the right to take property by descent or inheritance is strictly a statutory right and not a natural right. Such matters are strictly and exclusively within the legislative control. In re Schlicht's Estate, 221 Iowa 889, 266 N. W. 556; In re Estate of Emerson, 191 Iowa 900, 183 N. W. 327; In re Estate of Bradley, 210 Iowa 1013, 231 N. W. 661; McCune v. Oldham, 213 Iowa 1221, 240 N. W. 678. All of the states of the Union now have statutes of descent and distribution expressly providing schemes for inheritance and all differing to a greater or less extent in their provisions. It naturally follows that references to adjudicated cases of other states with statutes differing from our own are of little value in construing or determining the legislative intent and meaning in the enactment of our own statutes. Much has been said in appellant's brief by way of discussion of sentimental, ethical, and philosophical reasons in the support of her contention on this appeal, with the conclusion that "natural justice" demands that the natural parents have a greater moral right to the estate of their son than do the collateral heirs of adopting parents. All of this discussion however is completely answered in the Nebraska case, In re Enyart's Estate, supra, where the court says:

"Much has been said and written upon the natural rights flowing from the ties of kinship, relative to the right of inheritance, but, as we view the question, it is to be determined not as a matter of sentiment but as a matter of law, which has been settled by the law-making power of the state."

It will be observed by a reference to the quoted statutory provisions that there has been practically no change either in the statutes of adoption or of descent and distribution affecting the question here presented, from the time of the adoption of the deceased to his death in 1935. By the statute of adoption, section 10501-b6, the rights, duties, and relationships between the adopted one and the adopting parents are the same as exist between parents and child by lawful birth, and the right of inheritance from each other shall be the same as between parent and child born in lawful wedlock. So too, the provisions under the chapter of descent and distribution of intestate's property similarly provide, Section 12017, "In case of an adopted child, the parents by adoption shall inherit as if they were the natural parents."

Section 12025 provides that if the parents are both dead, that an estate which would have fallen to them by the general statutes of inheritance shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of the property falling to their share. And this section closes with the clause "and so on, through ascending ancestors and their issue." It cannot be successfully contended that in case of the decease of a natural son intestate, the parents being predeceased, that the collateral heirs of the parents would not inherit directly from the deceased son. If this were not so, following the strict provision of the last quoted clause, the inheritance would terminate if no ascending ancestors with issue were in existence. Yet, this is the construction that appellant asks us to put upon section 12027. The latter section providing in regard to adopted parents, that if they are both deceased at the time of the death of an adopted son, without issue or spouse, the estate of the adopted son shall be disposed of in the same manner as if such adopted parents had outlived the intestate and died in possession of such share "and so on, through their ascending ancestors." The appellant contends and asks the court to so construe section 12027 to prevent the descent and distribu-

tion of the estate of the adopted son to any other than the ascending ancestors of his adopted parents, and to declare that no such ascending ancestors having been found that then the natural parent shall inherit the estate under the provisions of section 12028. We cannot so construe the statute. Should we do so, we would ignore and nullify the provisions of sections 10501-b6 and 12017, both providing that the parents by adoption shall inherit as if they were the natural parents. These two sections contemplate the line of descent and distribution while the adopted parents are living, and we are not prepared to say that the legislature had in mind a different disposition of the property if the adopted parents were dead. It certainly cannot be contended seriously but what if the adopted parents were alive at the time of the death of the adopted son they would have inherited his entire estate, and upon their death, their heirs, either direct or collateral, would inherit their estates including any portion inherited from their adopted son, but because of their decease prior to the death of their adopted son appellant would have us say that their right to inherit from their adopted son terminated upon their death, and that unless there were ascending ancestors, grandparents or great grandparents, that the descent would cease, and that the natural parents and their heirs would then become the only heirs to the estate of the adopted son. We cannot so hold. The statutes providing that the estate shall be disposed of in the same manner as if the parents had outlived the intestate child is a fiction indulged in only for the purpose of ascertaining and determining the heirs, whether they be direct or collateral, to whom the estate shall be distributed. Appellant argues that the adopting parents had authority to impose upon themselves the status as son as to the adopted child, but no authority to impose upon the adopted son the status of uncle and cousins as between their collateral heirs and the adopted son. We cannot see why such status should not be imposed. The adopted son under certain conditions would inherit from his uncles, aunts, and cousins by adoption, and why is there any violation of natural justice to hold that the same uncles, aunts, and cousins should have the right to inherit, indirectly, from the adopted son? We are governed in our property rights by man made law. Our statutes have given an adopted child the status of a child born in lawful wedlock, why should not the relationship thus created impose upon the brothers and sisters of the

adopting parents the status of uncles and aunts of the adopted child? We can see no reason why such status should not be imposed. And under these statutes we can see no reason for differentiating between a natural born child and one made such by adoption, and we do not believe that it was the intent of our legislature to create such a differentiation. There is no basis for holding that the collateral heirs of the adopting parents are in any different position or situation than they would be had the adopted son been born to the adopting parents in lawful wedlock. It will be seen that the controlling factor in the descent of the intestate's property is the assumed possession and ownership in the parents on their death. After the intestate's death when this assumption is taken as a verity the heirs of the parents are immediately ascertained and are the direct heirs of the intestate adopted child, and as such are entitled to his estate.

We have recently had these statutes under consideration. In the case of Eggimann-Eckard v. Evans, 220 Iowa 762, 764, 263 N. W. 328, 330, we said, speaking through Justice Mitchell:

"Under section 10501-b6 of the Code of 1931, we find the same section re-enacted and giving an adopted child the same right of inheritance as exists between children born in lawful wedlock. And under section 12017 we find that provision is made in case of the death of an adopted child leaving no issue or surviving spouse, then his foster parents inherit from him as if they were natural parents. We see from this that under our law a child that is legally adopted has the same status as a child born in lawful wedlock."

See also Shaw v. Scott, 217 Iowa 1259, 252 N. W. 237; and cases therein cited. Also In re Havsgord's Estate, 34 S. D. 131, 147 N. W. 378; Shepherd v. Murphy, 332 Mo. 1176, 61 S. W. (2d) 746; In re Jobson's Estate, 164 Cal. 312, 128 Pac. 938, 43 L. R. A. (N. S.) 1062.

▮▮▮ We are constrained to hold that the collateral heirs of the adopting parents of John T. Fitzgerald, the deceased, are the heirs of the said John T. Fitzgerald, and that his estate should be distributed to them as and in the proportion indicated by the learned trial court in its final order and decree.—Affirmed.

KINTZINGER, PARSONS, HAMILTON, MITCHELL, and STIGER, JJ., concur.

RICHARDS, C. J., dissents.