IN RE ADOPTION OF A BABY GIRL.

IRENE ANN HERMAN, objector-appellant, v. NORA MARGUERITE McIVER et al., appellees.

No. 49081.

(Reported in 80 N.W.2d 500)

JANUARY 15, 1957.

REHEARING DENIED MARCH 8, 1957.

R. M. Fassler and Robert C. Nelson, both of Cedar Rapids, for appellant.

N. E. Lillios, of Cedar Rapids, for appellees.

THOMPSON, J.—Shortly before 11 p.m. on May 15, 1956, the objector herein, Irene Ann Herman, an unmarried woman, gave birth to an infant daughter at a Cedar Rapids hospital. About 11 a.m. on the next day, May 16, an attorney for the proposed adoptive parents, Nora Marguerite McIver and Floyd Malcolm McIver, Jr., wife and husband, of Albuquerque, New Mexico, appeared at the hospital and procured from the objector her signature to a purported consent to adoption. Since in our view of the case the form of the instrument is controlling, we set it out herewith:

"CONSENT OF MOTHER TO ADOPTION

"STATE OF IOWA:
 LINN COUNTY : ss.

"I, Irene A. Herman, being first duly sworn, state that my true name is Irene A. Herman, and that I am the mother of a baby girl, who was born on the 16th day of May, 1956, at Cedar Rapids, County of Linn, State of Iowa, that I am not in a posi-

tion to properly care for, raise and educate said baby girl and I therefore consent that the said baby girl be placed and left in the home of —————————————and——————————————— and that the said baby girl be adopted by them as their own child and I hereby expressly waive all notice of every kind and nature with reference to said proceedings to adopt said baby girl and do expressly consent that a decree of adoption of said child may be entered by the Judge of the District Court of Linn County, Iowa, and that such court have full jurisdiction of said proceedings for adoption as provided by law.

"I further state that the father of this child and myself are not married to each other.

"Dated at Cedar Rapids, Linn County, Iowa this 16 day of May, 1956.

"S/ Irene A. Herman

"Subscribed and sworn to before me this 16th day of May, 1956, by the said Irene Herman.

"S/ John J. Shea

Notary public in and for Linn County Iowa.   (SEAL)"

It is testified by the objector and confirmed by the attorney that at the time the alleged consent was signed the names of the proposed adoptive parents were not included, blank spaces being left as shown above.  The attorney, appearing as a witness for the proposed adopters, said that he told the mother at the time of the signing: "Now, I am not going to read the names of the adopting parents, that I have left them off of the consent, that as a practical matter in these cases it is better for everyone concerned that you don't know who the adopting parents are."

On May 21 next a petition for adoption of the child, stating that her name would be Barbara Lee McIver, was filed in the Linn County District Court.  A copy of the consent was attached thereto, and at this time the names of the McIvers as the proposed adoptive parents were inserted in the blank spaces.  However, there is no contradiction of the evidence that the names were not in the purported consent when it was signed by Irene Ann Herman, the natural mother of the child and the objector

and appellant here, and it is an established fact that they were so omitted.

Shortly after signing the instrument in question the mother changed her mind and attempted to withdraw the consent given. The court having fixed a time for hearing on the petition for adoption, she appeared by her counsel and filed objections. Upon trial the court overruled the objections, but said that because the child had not been in the home of the adoptive parents a sufficient length of time a decree of adoption would not be entered on that date. The court further said: "If the petitioners still find the child suitable in December, 1956, at their request an appropriate decree of adoption will then be entered." It is apparent from this that so far as the objecting mother was concerned, the trial was ended. A decree would be entered at the option of the adoptive parents, and she would have no further voice in the matter. Under these circumstances, we granted the right to appeal from an order before final judgment.

I. The mother's first objection to the proposed adoption, and the only one we find necessary to consider, is that the purported consent to adoption "is contrary to the laws and statutes of the State of Iowa, and is contrary to Section 600.3 of the 1954 Code of Iowa." The same point is raised in this court by the appellant's first proposition relied on for reversal, which asserts that the consent is a "blanket" consent, is contrary to section 600.3, lacks the necessary elements required to confer jurisdiction upon the court, and is contrary to the public policy of the State of Iowa.

We regard the provisions of Code section 600.3, supra, as controlling in the instant case. This section, so far as material, was found in the Code of 1946 in this form:

"No person may assign, relinquish, or otherwise transfer to another his rights or duties with respect to the permanent care or custody of a child under fourteen years of age except in accordance with this chapter. The consent of both parents shall be given to such adoption unless one is dead, or is considered hopelessly insane, or is imprisoned for a felony, or is an inmate or keeper of a house of ill fame, or unless the parents are not married to each other, or unless the parent or parents have signed a release of the child in accordance with the statute on child placing, or unless one or both of the parents have been

deprived of the custody of the child by judicial procedure because of unfitness to be its guardian. If not married to each other, the parent having the care and providing for the wants of the child may give consent. * * *."

This statute was amended by chapter 281, section 3, Acts of the Fifty-second General Assembly, by adding thereto the following:

"The consent shall be in writing and verified and a copy shall be attached to the petition. The consent shall refer to and be applicable only to the specific adoption proposed by such petition. Minority of a parent shall not invalidate a consent."

This language now appears as a part of section 600.3, supra, and is the governing law of the state upon the question of consent to a specific adoption. We think there is no escape from the conclusion that by the words "specific adoption proposed by such petition" is meant an adoption of a specific child by specific adoptive parents. Anything less is not specific in a material detail: in the case at bar, the names of the proposed adoptive parents. It is true the names were written in when the petition was filed; but they were not there, as the undisputed evidence shows, when the consent was signed, and the consenting natural parent had no knowledge of who the adopters were. On this point, Judge Harvey Uhlenhopp, of the Eleventh Judicial District, in his comprehensive study of the law of Adoption in Iowa, found in 40 Iowa Law Review, No. 2, page 228 et seq., says, at page 262: "It can be argued in such cases that the consenters have a specific adoption in mind. On the other hand, it would seem that they actually should know who is adopting; otherwise the purpose of the provision is not fulfilled."

We agree with the conclusion reached by the learned author, although not entirely with the first sentence quoted, at least as applied to the facts of the case at bar. It can hardly be argued that the natural mother had a specific adoption in mind, when the evidence adduced by both parties shows that she did not know who the proposed adopters were.

Adoption is purely statutory. Holmes v. Curl, 189 Iowa 246, 178 N.W. 406; In re Estate of Fitzgerald, 223 Iowa 141, 272 N.W. 117. It is essential, therefore, to look to the stat-

utes to determine the procedure to be followed; and a failure to follow them in any material respect is fatal to the power of the court to decree an adoption. The trial court in the instant case placed much emphasis upon the welfare of the child; but this alone is not sufficient ground for an adoption. There must be compliance with the statutory requirements pertaining to consent before the question of the best interests of the child is reached. "Compliance with requirements must be strict if the statute is mandatory; * * *." 2 C. J. S., Adoption of Children, section 21, page 386. Apt language is found in In re Sulewski, 113 Pa. Super. 301, 308, 173 A. 747, 749, 750, where it is said:

"Unless the requisite consents declared by the act of assembly to be necessary are obtained, or there is a specific finding that both the father and the mother of the children have abandoned them, a decree of adoption cannot be entered. The welfare of the children is not sufficient ground for the decree of adoption, unless based on the necessary consent of the parents, or on the distinct finding that the parent or parents not consenting have abandoned the children. The fact that the adoption asked for may be advantageous to the children and for their material welfare is not to be considered by the court until the necessary prerequisites for such action exist."

Even when the statute does not in terms require a consent to the specific adoption by naming the proposed adopters, it has been held in many cases that a "blanket" consent to adoption, to an adoption by unnamed and unspecified persons, is void. See the note in 24 A. L. R.2d, pages 1138, 1139, and cases cited. In both Petition of Foley, 123 Colo. 533, 232 P.2d 186, 24 A. L. R.2d 1123, and Martin v. Fisher, 25 Ohio App. 372, 158 N.E. 287, it was held that a requirement that the written consent to adoption be acknowledged and witnessed was mandatory and a failure to comply with it prohibited a legal adoption. Platt v. Moore, Tex. Civ. App., 183 S.W.2d 682, 685, states the rule thus: "The Legislature has enacted into the law the conditions upon which a minor child may be adopted and until those conditions are met, the fitness and qualifications of the respective parties are incidental."

■ The trial court was of the opinion that the names of the adoptive parents need not be included in the consent in order to meet the requirements of section 600.3, supra. With this we are unable to agree. The adoptive parents are one of the three important elements in any adoption, the other two being the child and the natural parent, or parents. It does not appear how an adoption can be specific when the adopters are not named in the consent. The Iowa legislature, in 1947, apparently took cognizance of the danger in permitting the use of "blanket" consents; that is, consents which agreed to the adoption of a child by unnamed, unspecified persons. We are unable to draw any conclusion from the amendment to the adoption statute made by section 3 of chapter 281 of the Acts of the Fifty-second General Assembly but that it was designed to prevent the very procedure which was adopted in the case at bar. The natural mother signed a consent in which no names of adopters appeared, and she was told that she would not be given the names. She was consenting to an adoption by persons entirely unnamed and unknown to her; so far as she knew, the consent could have been used to consummate an adoption by anyone, anywhere. There was no petition for adoption on file when she signed her consent. The attorney who procured the consent without doubt was sincere in his good intentions; he knew the proposed adopters and both he and the trial court considered they offered a good home. Yet such a practice, if sanctioned, is capable of great abuse. A consent to adoption by unspecified parties makes possible a real "black market" in babies. We think there has been little of this in Iowa. The legislative provision above referred to, if observed by the courts, will go far toward preventing any development of this evil practice. The wording of the statute is so plain that no specious reasoning can obscure it. Further elaboration of its clarity would be only belaboring the obvious.

■■ II. The trial court was also of the opinion that the objector had waived her right to complain that the consent was not specific. The reasoning is that she knew when she signed the consent that the names of the adopters were not contained therein, and she was told that she would not be informed who they were; and it is urged that having so executed the instrument she cannot now be heard to complain. But by this process of

deduction the interests of the child are entirely disregarded. The statute, section 600.3, is certainly intended at least as much for the protection of the child as of any of the other parties to the proceeding. Another short and complete answer to the claim of waiver is found in the fact that our adoption statutes proclaim the public policy of the State; and the public interest may not be waived. 56 Am. Jur., Waiver, section 5; 92 C. J. S., Waiver, page 1068; Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609, 614, 141 A. L. R. 1136; City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 1180, 102 A. L. R. 837; Meyer v. National Fire Insurance Co., 67 N. D. 77, 269 N.W. 845, 852.

A case much in point on the question of waiver is In re Adoption of Parker, 31 Cal.2d 608, 617, 191 P.2d 420, 425, in which the claim was made that the natural mother of an illegitimate child was estopped from objecting to the proposed adoption because she had signed a consent thereto. The California statutes provided that such a consent must be accepted by the State Department of Social Welfare. The consent was not accepted by the department within the meaning of the statutes; that is to say, the department did not approve it. The California Supreme Court, in reversing a decree of adoption because of lack of the statutory requisites, said:

"In the present state of the record there is no basis for the application of the doctrine of estoppel in this case. The code, in order to protect the interests of the child and other persons concerned, permits an adoption only in the manner specified. Resort to estoppel where the statutory requirements are not met would not only defeat the safeguards prescribed by the Legislature but would amount to the creation of a method of adoption—by private agreement of the parties—not recognized at common law or by statute."

We ourselves have said that the right of exemption in a homestead, to hold it free from debt, represents the public policy of the State, and may not be waived. Curtis v. O'Brien, 20 Iowa 376, 377, 89 Am. Dec. 543. We have also said that statutory rights given the insured by insurance policies cannot be contracted away, that is, they may not be waived by contract. Soren-

sen v. Farmers Mut. Hail Ins. Assn., 226 Iowa 1316, 1318, 286 N.W. 494, 123 A. L. R. 1000.

There seems no room for doubt that section 600.3, supra, was intended by the legislative body to represent the public policy of the State. This being so, the objector could not waive its provisions for herself, and much less for the infant child.

We hold that section 600.3 lays down a definite rule which must be followed in adoption cases, no matter how desirable it may appear to be, under some circumstances, that it be circumvented. Accordingly the order of the trial court must be, and it is, reversed. The cause is remanded, with directions to dismiss the petition for adoption.

The appellant's motion to strike the appellees' brief and argument is denied.—Reversed and remanded, with directions.

All JUSTICES concur.