Melanie Ann JENSEN ex rel. Angela Patricia JENSEN, an infant, Appellant,

v.

Vera CREASON and Eugene Creason, Appellees.

No. 60922.

Supreme Court of Iowa.

April 19, 1978.

Lyle A. Rodenburg, Council Bluffs, for appellant.

Dippel & McCann, Council Bluffs, for appellees.

Considered by MOORE, C. J., and RAWLINGS, LeGRAND, REES and HARRIS, JJ.

REES, Justice.

This is a habeas corpus action by Melanie Ann Jensen to regain custody of her daughter, Angela Patricia Jensen, from the defendants Vera and Eugene Creason. After an extended hearing the trial court dismissed the petition for habeas corpus. We affirm.

Melanie Ann Jensen, unmarried, gave birth to Angela Patricia Jensen on May 1, 1976. The child was premature and in bad health, and remained in the hospital for about six weeks after birth. Melanie was 19 years of age and inexperienced. She testified she was frightened because the baby was "fussy" all the time and she did not know how to handle her. There is testimony in the record that Melanie was receiving advice from several friends and also from her family as to whether she should keep Angela or place her for adoption. There is some conflict in the testimony as to the circumstances under which the child was taken by Melanie to one Judy Shymanski, but in any event the record establishes Melanie advised Shymanski to come to her apartment on July 5, 1976 and take Angela, otherwise Melanie intended delivering the child to an orphanage. Melanie denied this, and testified she had mentioned to Shymanski she was considering giving up the child and that Shymanski took over from there, finding the defendants as adoptive parents, taking the baby, securing from Melanie a "release" and later accompanying Melanie to the office of Attorney Dippel for the purpose of executing a formal release of the child. The release which Melanie gave Shymanski at the time the child was taken from Melanie's apartment was written in her own hand as follows:

"I, Melanie Jensen have given the baby Angela Patricia Jensen freely and will not reclaim her at anytime. I will keep my appointment with lawyer when time given and ask nothing for this child other than love and affection.

Melanie A. Jensen."

Two days after Shymanski removed the child from Melanie's living quarters, she took Melanie to Omaha to obtain a birth certificate for the child, the original having become lost. At Melanie's request Shymanski took her to the office of Attorney Dippel, where she executed multiple copies of a

formal consent to adoption, but at her own request Melanie was not advised of the names of the prospective parents which appeared in the consent. There is a conflict in the testimony as to whether the consent was read to Melanie before she signed it, and about whether she had an opportunity to read it herself, but it is abidingly clear Melanie was told she could not get her baby back if she signed the consent. Nevertheless, she testified at the trial she did not understand the consequences of signing the instrument.

The petitioner states the following issues for review:

(1) Whether there was sufficient evidence to support the trial court's conclusion that Melanie had instigated the signing of the "release" and consent and had knowingly, intelligently and voluntarily signed the consent and relinquished the custody of the child; and

(2) Whether the consent signed by Melanie is a valid consent to a specific adoption given to persons known to her when no petition for adoption was prepared or filed in Iowa pursuant to chapter 600, The Code, and whether the trial court erred in dismissing the petition for writ of habeas corpus after an evidentiary trial.

■ I. This action is equitable in nature, and we review the record de novo. *Doan Thi Hoang Anh v. Nelson,* 245 N.W.2d 511, 512 (Iowa 1976) and citations. In our review of this case, when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. Rule 14(f)(7), Rules of Appellate Procedure.

■ II. The trial court made extensive findings of fact before reaching its conclusion that the detention of Angela by the respondents was not illegal and dismissing the petitioner's application for writ of habeas corpus. Our review of the record indicates that everything done in this case which affected the delivery of the child to Judy Shymanski and eventually to the defendants was done at the instance and instigation of Melanie Ann Jensen.

We are cognizant of the fact that Melanie at the time of the birth of the child was 19 years of age and unmarried; that the child was in fragile health when born and remained in the hospital for approximately six weeks, after which time Melanie took the child to an apartment which she shared with two other young women. The record indicates Melanie was concerned about the child's delicate health and sought counsel from her apartment mates and other friends as to what she should do with the child. She testified she mentioned to Judy Shymanski she was thinking about letting the child out for adoption, and that Shymanski responded only by inquiring whether Melanie was certain that is what she wanted to do. One of her apartment mates, Debbie Todd, testifying in Melanie's behalf, stated Melanie inquired of her also as to what she should do with the child, and that Debbie's response to her was that she should be careful and make up her own mind.

It appears Judy Shymanski was baby-sitting with the infant on one occasion and that a neighbor, Mary Hughes, stopped at the Shymanski home and inquired as to whose child it was. Judy Shymanski advised Mary Hughes the baby belonged to Melanie and that Melanie was going to place the child for adoption. The record indicates Mary Hughes knew that her sister and her husband, Vera and Eugene Creason, desired to adopt a child, and after conferring with them, she advised Judy Shymanski she had someone who would be anxious and willing to take the child for adoption. This information, except for the identity of the Creasons, was conveyed to Melanie by Judy Shymanski. Melanie then asked Shymanski to let her know within a few days whether such persons desired to adopt the child. Shymanski later advised Melanie that the parties would take the child. By reason of the fact the original birth certificate was lost Shymanski took Melanie to Omaha and secured a duplicate birth certificate.

The court found that Melanie contacted Judy Shymanski on July 5, 1976 and told

her she should come and get the child that day. Judy and a second friend went to the petitioner's home and after the parties all joined in a soft drink the petitioner gave the child to Shymanski, together with her clothes and baby food, and at the instance of Shymanski wrote the informal release note set out above.

The record further shows, and the trial court found, that two days thereafter Melanie called Judy Shymanski and requested that Shymanski take her to the attorney's office to sign the necessary papers. An instrument entitled, "Consent of Mother to Adoption and Waiver of Notice of Hearing" had been prepared by Attorney Dippel. Mr. Dippel and Melanie discussed the consents for a period of approximately one-half hour, and the consent in full was read to her with the exception that at Melanie's request Dippel did not disclose the names of the adoptive parents, although the names appeared in the consent. The record shows that Melanie then took multiple copies of the consent into another room in the attorney's office where she signed all copies and delivered them to the attorney.

Based on the foregoing events, all found to be facts by the trial court, the trial court concluded that the delivery of the child by Melanie to Judy Shymanski, together with the signing of the informal release at that time by Melanie and the subsequent signing of the consent in Dippel's office, was all done at Melanie's instigation and that each and all of those acts were done by her knowingly, voluntarily, willingly and of her own free will and accord. The court further found and concluded as a matter of law that the restraint and detention of the infant child by Vera and Eugene Creason was not illegal and dismissed Melanie's petition for writ of habeas corpus.

Our de novo review of the record leads us to reach the same conclusions as that reached by the trial court; namely, that there was sufficient competent evidence that Melanie Ann Jensen instigated the proceedings culminating in the delivery of her child to Judy Shymanski and eventually the delivery of the child to the respondents, and that she knowingly, voluntarily and willingly consented to the adoption of the child Angela.

III. The petitioner also asserts that the trial court erred in refusing to grant the writ of habeas corpus to secure custody of the child since the consent did not refer to a specific adoption and no adoption petition was filed at the time she signed the consent. We have said that consents that do not refer to specific adoptions, or in other words, blanket consents, are not valid under § 600.3, The Code, 1975. *Stotler v. Lutheran Social Services of Iowa*, 209 N.W.2d 121, 125 (Iowa 1973); *Sampson v. Holton*, 185 N.W.2d 216, 219 (Iowa 1971); *In re Adoption of a Baby Girl*, 248 Iowa 619, 623–625, 80 N.W.2d 500, 504–505.

We are satisfied from our de novo review of the record that the identity of Vera and Eugene Creason was either known to Melanie Ann Jensen at the time she signed the consent to adoption or that the names of the respondents were readily available to her at the time she visited the office of Attorney Dippel and signed the consent forms. We conclude the consent forms were knowingly, willingly and voluntarily executed by Melanie Ann Jensen and constituted a valid consent to Angela's adoption by respondents. The fact no petition for adoption was on file at the time the consent was signed by the petitioner is not significant in this case. The requirement under § 600.3, The Code, that the consent be attached to the adoption petition is a necessary element of a valid adoption petition. Melanie Ann Jensen's consent to the adoption of her child is not rendered invalid due to the fact it was not attached to a petition for adoption.

We have studied the entire record with care and find no basis upon which we can reach any conclusion except that reached by the trial court in its order dismissing the petition for writ of habeas corpus.

The judgment and decree of the trial court is, therefore, affirmed.

AFFIRMED.