In re the MARRIAGE OF Kenneth Robert ATHY and Ann Harriet Athy.

Upon the Petition of Kenneth Robert Athy, Petitioner–Appellant,

and concerning Ann Harriet Athy, Respondent–Appellee.

No. 87–1337.

Court of Appeals of Iowa.

June 29, 1988.

As Corrected Sept. 19, 1988.

Jennifer J. Rose, Shenandoah, for petitioner-appellant.

Thomas E. Stamets, Red Oak, for respondent-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

Kenneth Athy appeals the district court's decision granting custody of his two children, Erin and Annette, to their mother, Ann Athy, upon dissolution of their marriage. Kenneth requests this court grant both him and his wife joint custody of their children and award Kenneth physical custody. Both parties request a clarification of visitation rights. Additionally, Kenneth argues that the economic distribution was inequitable. We affirm the district court's decision as herein modified.

▆ Review of dissolution cases is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact, especially where the credibility of witnesses is involved; but we are not bound by them. Iowa R.App.P. 14(f)(7).

Kenneth and Ann Athy were married on June 4, 1972. Two children were born of this marriage, Annette Louise and Erin, ages now ten and eight. Kenneth petitioned the district court for dissolution of this marriage on February 17, 1987. Trial was held on July 1, 1987, and the district court issued its decision regarding this matter on August 5, 1987.

## I. JOINT CUSTODY

▆ Kenneth requests the court grant both he and his wife joint custody of their children. In child custody cases, the best interests of the child is the first and governing consideration. Iowa R.App.P. 14(f)(15); *Schoonover v. Schoonover*, 228 N.W.2d 31, 34 (Iowa 1975). The factors considered in awarding custody are enumerated in section 598.41(3) of the Iowa Code and in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), and need not be repeated here. The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant and "neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding." *In re Marriage of Bowen*, 219 N.W.2d 683, 689 (Iowa 1974).

▆ Because our object is to make a custody award "which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents" after dissolution of the marriage, Iowa Code § 598.41(1) (1985), we favor granting joint custody whenever reasonable and in the child's best interests. When either parent applies for joint custody, we shall consider granting it even when the other parent opposes joint custody. Iowa Code § 598.41(2) (1985). In the event that joint custody is not awarded, it is necessary to cite "clear and convincing evidence ... that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed." *Id.* "These changes reflect a legislative preference for maximum parent-child contact in determining reasonable visitation, and require a court denying a request for joint custody to expressly cite clear and convincing evidence supporting its decision." *In re Marriage of Miller*, 390 N.W.2d 596, 599 (Iowa 1986).

The trial court cited the following specific evidence as relevant to its determination of joint custody.

1. Kenneth testified the girls wanted to live with him. However the school nurse said Annette requested her mother attend her when she was recently hurt.

2. Kenneth permitted the girls to watch vulgar HBO movies.

3. Kenneth blacked out information put on day camp registration by Ann. The court found this "quite arrogant on the part of the petitioner."

The trial court made the following conclusions:

The parties are unable to communicate and Kenneth especially would "use these children as pawns in his relationship with the respondent."

The trial court at the close of the trial orally addressed the parties and said:

I would caution the parties, and especially Mrs. Athy, that it's obvious that she is extremely bitter. I hope that now that you have had your day in court that you can start restoring some balance between you and the children.

With these facts and events in mind, we must determine whether the trial court erred in awarding sole custody to Ann and in rejecting an award of joint custody. We shall consider the best interests of the minor children by considering the factors stated in section 598.41(3).

Positive factors indicating that joint custody is viable are as follows:

1. Each parent would be a suitable custodian for the children.

2. Both parents cared for the children when they were sick, assisted them in homework, disciplined the children and shared household maintenance activities. This activity occurred before and after the dissolution proceedings began.

3. Kenneth stayed in the hospital overnight with the children. He provided home care when one child had a tonsillectomy. He puts the children to bed and gives them their bath. He reviewed their school work and attends their school conferences. He makes their breakfast and plans their sack lunches.

4. The geographical location is advantageous to joint custody since both parties are remaining in Stanton.

5. Prior to trial the parties agreed to the distribution of their household goods.

6. The trial court felt the parties could agree to a visitation schedule so it did not make a special schedule.

Neutral factors include the following:

1. Because of the children's ages, nine and seven at the time of trial, their wishes are not controlling.

2. A professional witness was not consulted by the parties or appointed by the trial court.

The following are negative factors:

1. Ann is opposed to joint custody.

2. Ann opposed counseling for their children at Waubonsie Mental Health Center in Clarinda.

3. The parties lived together during the period between filing the dissolution action and trial. Many instances occurred during this period where each parent interfered with the other's relationship with the children. Both parties have bitterness toward each other that interferes with their communication with each other.

4. Ann was reluctant to permit Kenneth to have summer visitation with the girls.

5. Ann testified she was not willing at the present time to renew communication between herself and Kenneth. She said the following would be required before she would be willing to reopen communication:

That family relationships are restored and that communication is positive and that those things which we agree are good for the children are followed and some of these negative things are eliminated.

█ We conclude there isn't clear and convincing evidence sufficient to deny joint custody in this case. We believe the hostility between the parents is a temporary situation exacerbated by the continued living together during the post-dissolution filing period.

Prior to this period of time the parties were jointly involved in the daily care of their children. We see insufficient reason to deny Kenneth the right to share in the normal parental responsibilities of the children's legal status of medical care, edu-

cation, extracurricular activities, and religious instruction.

We modify the trial court's decree to provide Ann and Kenneth joint custody of their children Annette and Erin.

## II. PHYSICAL CARE

■ We now turn to address the issue of which parent should have physical care of Annette and Erin. In our de novo review of the record we find that both parents are equally capable of properly raising these girls. We find insufficient reason to change the decision made by the trial court and so we affirm their physical care with Ann.

## III. VISITATION RIGHTS

■ Kenneth requests that the district court's decision granting him nonspecific "liberal rights of visitation" is too vague. We agree. *Black v. Black*, 203 N.W.2d 121, 125 (Iowa 1972). Liberal visitation rights are in the best interests of the children. Iowa Code § 598.41(1). *In Re Marriage of Muell*, 408 N.W.2d 774, 777 (Iowa App.1987). We adopt the following visitation schedule:

a) Kenneth will have visitation rights with his daughters every other weekend from 5:00 p.m. on Friday until the following Sunday at 5:00 p.m. commencing the first weekend following the date of this decision.

b) Kenneth will have visitation rights with his daughters one night each week, any day between Monday and Thursday, from 5:00 p.m. until 8:00 p.m.

c) Beginning in 1988, Kenneth will have the girls with him during the children's school Christmas vacation. Kenneth will have the girls during spring break in 1990. Following years the parties are to alternate Christmas and spring breaks accordingly. The parties shall cooperate so the girls may spend part of Christmas day with each parent.

d) Beginning in 1989, Kenneth will have visitation rights with his daughters on their birthdays in alternating years. The parties

shall cooperate so the girls may spend a part of the birthday with each parent.

e) Beginning in 1988, Ann will have the girls with her on Thanksgiving Day. In years thereafter, the parties will continue to alternate this holiday. Kenneth shall have the girls for four weeks each summer, beginning in 1988.

## IV. ECONOMIC DISTRIBUTIONS

Kenneth argues that the district court, in determining economic distribution between the parties, undervalued the equity in the family home, made no finding concerning his inherited and gifted properties, and erroneously valued the amount of cash on hand held by each party. We affirm the district court's economic distribution as herein modified.

■ Iowa courts apply a standard of equity in determining economic distribution in dissolution cases. Iowa Code § 598.21(1) (1987) and *Locke v. Locke*, 246 N.W.2d 246, 251 (Iowa 1976) (court quoting *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968)).

■ In the case presently before us, it is unclear whether the donors, Kenneth's parents, intended to give the money solely to Kenneth. Kenneth testified that this money was a gift to him alone; Ann testified otherwise. Kenneth's mother spoke at length concerning other issues, but gave no testimony regarding her donative intent. It is only clear from the record that such money was placed in Ann and Kenneth's joint banking account and used for family debts. The money has been spent in the exercise of fulfilling the parties' responsibility to provide for the family unit. Kenneth has received full benefit of the use of this money in discharging this responsibility. To set aside this sum for Kenneth would give rise to an inequitable result.

■ Kenneth argues that the trial court undervalued the equity in the home. The district court awarded Ann all rights, title and interest in the family home and severed all of Ken's claims to that title. Ann estimates the equity in the family home to be $701.44; whereas Kenneth estimates the

equity to be $11,202, the trial court found the equity to be $5,700, a figure we accept.

Each partner is "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran*, 406 N.W.2d 450, 452 (Iowa App.1987). All economic aspects of the decree must be considered in reaching an equitable distribution. *Id.* Ann's earning capacity is presently larger than Kenneth's. However, Kenneth chose to leave the teaching profession and enter a less profitable line of work. Ann has custody of the children and will be primarily responsible for their financial needs unless modification for support is made to the court in the future. This decree finds Ann's assets (cash on hand) to be $20,892 and Kenneth's assets to be $18,099. Kenneth is awarded the Datsun as an inheritance valued at $1,250, and is awarded the Dodge pickup valued at $2,695. Ann is awarded the family Buick valued at $3,000. We find the trial court did substantial equity and we affirm the economic matters.

We affirm the district court's award of trial attorney fees and trial court costs. Neither party is awarded attorney fees. Appellate court costs are taxed equally.

AFFIRMED AS MODIFIED.