In re the MARRIAGE OF Rawnene L. HOLCOMB and Robert J. Holcomb,

Upon the Petition of

Rawnene L. Holcomb, Petitioner–Appellee,

And Concerning Robert J. Holcomb, Respondent–Appellant.

No. 90–956.

Court of Appeals of Iowa.

April 2, 1991.

Charles L. Roberts and Emil Trott, Jr., Des Moines, for appellant.

Randy V. Hefner of Van Werden, Hulse & Hefner, Adel, for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ., but decided en banc.

SACKETT, Judge.

Respondent-appellant Robert J. Holcomb appeals the decree dissolving his marriage to petitioner-appellee Rawnene J. Holcomb. Robert contends (1) he should not have been ordered to pay support for his step-son, (2) he should have been awarded custody of his daughter, or at least made a joint custodian, and (3) the child support awarded by the trial court was excessive. Rawnene requests attorney fees on appeal. We affirm as modified and remand.

I.

Robert contends there was no basis for the trial court to order him to pay child support for Shane Hudson, born to Rawnene and her first husband in 1982. We agree. In August 1983 Rawnene moved in with Robert. Her marriage to her first husband, a Mr. Hudson, was not dissolved until February 1984. In her decree of dissolution she received custody of Shane. Hudson was ordered to pay child support of $25 per week. Four days after the dissolution of her marriage, Rawnene married Robert. Early in April 1984 Rawnene went to her lawyer. She told him Robert was going to adopt Shane. The lawyer opened a file for the purpose of termination of parental rights and adoption. Rawnene then bargained with Hudson to give up his rights to visitation in exchange for Rawnene not trying to collect child support. On April 4, 1984, Hudson stopped at Rawnene's lawyer's office and signed a consent to termination of his parental rights. Hudson wanted his parents to be permitted to visit with Shane. He did not want Shane Hudson's name to be changed. On April 18, Rawnene filed a petition in Dallas County, Iowa, to terminate Hudson's parental rights. On May 25, 1984, an order was entered terminating the parental rights be-

tween Hudson and Shane. The order also appointed Robert as guardian of Shane Hudson. Robert claimed he did not know anything about the guardianship. There is no evidence Robert took any part in these proceedings. Robert has never been qualified as guardian. The termination petition was filed only by Rawnene. Her sole grounds for termination were she was the mother, and the natural father consented to termination for good cause. No adoption petition was ever filed.

While the couple lived together Robert treated Shane like a son and contributed substantially to his support.

Rawnene in her dissolution petition alleged the welfare of only one child, Shayla, a daughter born to this marriage, was involved. In the middle of the trial, Rawnene amended her petition, with the court's permission, alleging Shane Hudson was the child of the parties. She asked that Robert pay child support. The trial court found:

> That Shane has resided only with these parties for the past five years. That the Respondent is obliged to pay child support for Shane based on:
> a. Equitable estoppel;
> b. Implied contract;
> c. Equitable adoption, virtual adoption, on adoption by contract.

The court further concluded that Rob is obliged to support Shane because of equitable estoppel. The evidence supports the conclusion that Rob did make a representation or commitment that he would adopt Shane; that he intended that Rawnene would terminate Shane's father's rights and obligations as a father of Shane; and Rawnene did rely on Rob's representations, thereby losing any right to collect support for Shane from his father.

These are the only findings by the trial court on this issue.

■ Robert first contends estoppel cannot form a basis for ordering support for a stepchild in a dissolution decree. We agree. The Iowa court has held in interpreting our dissolution statute that there is no authority to make a child support award for a stepchild. *See Mears v. Mears*, 213 N.W.2d 511, 518 (Iowa 1973); *In re Marriage of Carney*, 206 N.W.2d 107, 112 (Iowa 1973). An Iowa court cannot order support for a stepchild; nor may one who accepts the responsibility for a child as *in loco parentis* be required to furnish support for the child subsequent to dissolution of marriage. *Carney*, 206 N.W.2d at 112. The term "in loco parentis" refers to a person who has put him or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formalities necessary to legal adoption. *Id.* at 113.

■ Robert next contends the trial court incorrectly found an equitable adoption had taken place. We agree.

■ Adoption is purely statutory. *In re Adoption of a Baby Girl*, 248 Iowa 619, 623, 80 N.W.2d 500 (1957); *Sampson v. Holton*, 185 N.W.2d 216, 218 (Iowa 1971). Failure to follow statutorily prescribed procedures in any material respect is fatal to power of court to decree an adoption. *In re Adoption of Baby Girl*, 248 Iowa at 624, 80 N.W.2d at 503.

■ Permanent rights and obligations regarding children can only be transferred by court decree, by compliance with the statute on child placing agencies, or by adoption. *Sampson*, 185 N.W.2d at 219. A failure to follow adoption provisions in any material respect is fatal to the power of the court to decree an adoption. *Id.* Adoption is purely statutory and the failure to follow the prescribed statutory procedures is fatal to the power of the court to decree an adoption. *See In re Adoption of Gardiner*, 287 N.W.2d 555 (Iowa 1980); *In re Adoption of Gibson*, 239 N.W.2d 540 (Iowa 1976); *In re Adoption of Cheney*, 244 Iowa 1180, 59 N.W.2d 685 (1953).

There have, however, been Iowa cases where rights to property were acquired under contractual provisions of a written or parol contract that fell short of a statutory instrument of adoption. *See Bergman v. Carson*, 226 Iowa 449, 453, 284 N.W. 442, 444–45 (1939); *Morris v. Trotter*, 202 Iowa 232, 234, 210 N.W. 131, 132 (1939); *see also In re Estate of Fitzgerald*, 223 Iowa 141,

272 N.W. 117 (1937); *Holmes v. Curl*, 189 Iowa 246, 178 N.W. 406 (1920). No Iowa case has held the court in doing equity cured the defects in the adoption to effect a legal adoption as though the statutory proceedings had been fully complied with. *Wooster v. Tax Commission*, 230 Iowa 797, 801, 298 N.W. 922, 925 (1941). Furthermore, we do not find here the clear, satisfactory and convincing evidence the court has determined is necessary to support such a contract. *See Bergman*, 226 Iowa at 456, 284 N.W. at 445.

Shane continued to use the name Hudson. Rawnene testified an important aspect of the termination was to rid Shane of his natural father, a known drug user. The procedure employed in the termination procedure gave no indication an adoption was expected. In fact, the proceeding dictates a contrary conclusion. Robert's adoption of Shane would have been a stepfather's adoption. With the natural father's consent, termination and adoption could have been part of the same procedure. *See* Iowa Code section 600.3(2)(b) which provides if the stepparent of the child to be adopted is the adoption petitioner, the parent-child relationship between the child and the parent who is not the spouse may be terminated as part of the adoption by the filing of the parent's consent to the adoption.

Although Rawnene claims Robert was going to adopt Shane, her testimony does not reflect a firm agreement by Robert to adopt. Rawnene testified:

Q. After May of 1984, Rawnene, did you have any further conversations with Mr. Holcomb about adopting Shane? A. Yes.

Q. More than one conversation? A. Yes.

Q. Would the subject come up often? A. Once or twice a year.

Q. And what did Mr. Holcomb tell you was his position about adopting Shane? A. Well, the first year when I asked him he said he just simply hadn't had time, he was busy. And I don't feel like I should have to force anybody into doing something like this. If it doesn't come from the heart, don't do it. When we discussed it, oh, within the last two or three years he would look at me and tell me that he wasn't—I wasn't going to take him for two child supports.

There was a close relationship between Shane and Robert. The New Jersey court, while finding principles of equitable estoppel could be used to collect child support from a stepparent, rejected in their consideration the fact the stepparent had adopted a close relationship with the children, nurtured them into a family unit with himself as the father, and had the children call him "daddy." *See Miller v. Miller*, 97 N.J. 154, 478 A.2d 351 (1984). The court said to hold otherwise would create enormous policy difficulties. The court reasoned a stepparent who tried to create a warm family atmosphere with his or her stepchildren would be penalized by being forced to pay support for them in the event of a divorce, while a stepparent who refused to have anything to do with his or her stepchildren beyond supporting them would be rewarded by not having to pay support in the event of a divorce. *See Miller*, 97 N.J. at 168, 478 A.2d at 358. The fact that Robert had a loving, caring and supportive relationship with Shane does not justify finding Robert has an obligation to support Shane following the dissolution of this marriage. To use the relationship to impose a support obligation would discourage stepparents from establishing close and loving relationships with stepchildren.

We modify the decree to eliminate the finding there was equitable adoption. We strike the provision of the decree ordering Robert to pay child support for Shane.

II.

■ Robert contends he should have physical care of his daughter or at least have been made a joint custodian. The trial court awarded sole custody of Shayla to Rawnene. The directive on joint custody is clear. To deny joint custody requires a finding by clear and convincing evidence that joint custody is not reasonable and not in the best interest of the child to the extent the legal custodial relationship be-

tween the child and a parent should be severed. Iowa Code § 598.41(2), (3); *see also In re Marriage of Athy*, 428 N.W.2d 310, 311 (Iowa App.1988); *In re Marriage of Bartlett*, 427 N.W.2d 876, 877 (Iowa App.1988); *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985).

Robert is a loving, caring and interested parent. He has had substantial input in Shayla's care. Shayla needs this continued input. Joint custody is appropriate. We modify the decree to provide for joint custody with physical care in Rawnene. We have considered carefully Robert's request for custody of Shayla. While we are concerned about Rawnene's alcoholism and her lack of maturity, she has been a loving and caring parent. The question is very close. Granting physical care to Rawnene keeps Shane and Shayla together. We are directed that half brothers and sisters should be separated only where it may better promote the long-range interest of the children. *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). We affirm the custody award as modified.

### III.

■ Robert contends the child support was not equitable. The trial court apparently applied the child support guidelines but made no findings as to the income of the parties as defined by the guidelines. The parties are not in agreement as to these figures. The record is not sufficient to address this issue. We remand in accordance with our earlier decision. *See In re Marriage of Craig*, 462 N.W.2d 692, 693 (Iowa App.1990). We direct until a hearing is held support shall continue for Shayla

only in the amount of $383.50 per month, one-half the amount fixed by the trial court for two children.

### IV.

Robert contends the property division was not equitable. He argues he brought nearly all the property into the marriage and leaves with little. We have assessed the property division under the appropriate decisions. We find no reason to disturb it. *See In re Marriage of Williams*, 421 N.W.2d 160 (Iowa App.1988); *In re Marriage of Dahl*, 418 N.W.2d 358 (Iowa App. 1987).

Each party shall pay his or her own attorney fees and one-half of the costs on appeal.

AFFIRMED AS MODIFIED, AND REMANDED.

All Judges concur except OXBERGER, C.J., and HAYDEN, J., who specially concur.

OXBERGER, Chief Judge (specially concurring).

I concur in the result only.

HAYDEN, Judge (specially concurring).

I concur in the result only.