STATE OF IOWA ex rel. C. E. GILMAN, appellee, v. ALLEN EUGENE BACON, defendant; MARLIN L. BACON, appellant.

No. 49475.

(Reported in 91 N.W.2d 395)

1234

Levinson & Danforth, of Mason City, for appellant.

Howard W. Dresser, of Mason City, for appellee.

Thompson, J.—The appellant, Marlin Bacon, who will hereinafter be referred to as the defendant, was forty years of age at the time of the hearing in the trial court in which the court's judgment was filed on November 29, 1957. The child whose custody is involved, known as Allen Eugene Bacon, was six. About the year 1942 the defendant was living in Waynesboro, Pennsylvania. He was married in that year to Mary Elizabeth Miller and lived with her until about January 17, 1953, when she died. Apparently this marriage was harmonious. In the year 1942 they took into their home a six-weeks-old baby, known in the record as Howard Bacon. The child was obtained from its father, the mother having died. This child is still in the defendant's custody, and is not involved in the case before us, except as he may have been to some extent responsible for the difficulties which defendant had with his next wife, Ruth Kyle Bacon, whom he married on October 15, 1953, and from whom he was divorced on November 15, 1957. This was defendant's third marriage.

After living in Waynesboro for several months after his marriage to Mary Miller, the family moved to Mason City, Iowa, where the defendant was employed for a short time. They then went to Austin, Minnesota, where he worked for a packing firm. Apparently because of his wife's health, defendant was transferred to San Antonio, Texas, by his employer; but the change proved of no benefit and the family returned to Austin. He

was employed by the packing company about four years. In 1946 they went to California, where he was employed by a railroad company for about one year. In 1947 the family returned to Mason City, where the defendant worked for another railroad company. They remained in Mason City until 1950, when they removed to Charleston, West Virginia, and remained until the death of defendant's wife.

In 1952, while visiting in Waynesboro, the defendant and his wife secured the custody of the child involved in this proceeding. He was three weeks old at the time, and was the child of an unwed mother, who apparently gave the child to the Bacons permanently. The defendant said the mother signed a written instrument relinquishing all her rights to the child; but this statement could not be produced and defendant testified it has been lost. At any rate the mother seems to have made no claim and her rights are not involved in this proceeding, except as the trial court protected them by a finding that she had never legally surrendered the child and she must be made a party to the action before the boy could be placed in an institution for permanent adoption; and jurisdiction was retained for that purpose.

The manner in which the Bacons obtained custody of both Howard and Allen Eugene was informal, and no attempt has been made to adopt either of them. After the death of his wife in January of 1953 the defendant took the two boys to California, where they lived in the home of his sister for two or three months. The next stop was again at Mason City, where defendant was married to Ruth Kyle and where the family resided, in several different houses, apartments, and rooms, until about the time of the hearing.

Shortly after the marriage to Ruth Kyle, violent quarreling developed between the husband and wife. This resulted in a situation distinctly detrimental to the small boy, Allen. The record shows it had developed in him an emotional instability which was quite apparent. In August of 1954 the defendant asked the Cerro Gordo County probation officer to care for Allen temporarily, saying he was without employment and was unable to give him a proper home. Thereupon the probation officer filed a complaint under Code chapter 232, charging that the boy was

a dependent and neglected child. A hearing was held on August 17, 1954, and the court, through the same Judge who has acted in this matter at all times, ordered that the child be placed in the temporary custody of the probation officer. A home was found for him; but on December 28 next, after a hearing, the court found that the defendant had permanent employment and was able to furnish a suitable home, and returned the custody to him; retaining jurisdiction, however, and directing that the child be not removed from Cerro Gordo County without the consent of the court.

Following this, the defendant or his wife, Ruth, or both, were frequently informally before the court or the probation officer, or both, in connection with their marital difficulties. The small boy was necessarily affected by these continued quarrelings, as the record shows. Much of the strife centered around the inability of the wife to live harmoniously with the older boy, Howard, who was fifteen years of age at the time of the final hearing. It also appears that she had no co-operation from the defendant in her attempts to control Howard. Some of the authorities who tried to deal with the situation over the years testified that the defendant would admit no error on his part or any fault in the matter. At one informal hearing the court suggested that the parents should set a good example, and that going to church and to the Mental Health Center might be helpful in solving their problems. The defendant, however, ignored this advice.

After more than three years of repeated conferences and informal hearings, during all of which time the court had before it the problem of what was for the best interest of Allen, the matter was finally brought to the point where a definite ruling was necessary. Having obtained a divorce from Ruth in November 1957, the defendant proposed to remove to San Jose, California, with the two boys. He said he expected to live there with his sister and her husband and to work for the husband in a service station. However, he does not claim that this arrangement would be permanent; he expects he will remarry at some time in the future. The court thereupon was faced with the question of permitting the defendant to remove Allen from its jurisdiction and losing all control of the matter; or of making

a final and permanent decision on what it had theretofore handled on a temporary basis. It chose to decide the matter on its merits, and after a full hearing ordered that both Marlin and Ruth Bacon be permanently deprived of custody of the child, which it found to be dependent and neglected within the meaning of the statutes. Marlin Bacon alone appeals.

I. The major question for determination here is, what is for the best interest of the child? The matter is triable de novo, as the defendant urges. McKay v. Ruffcorn, 247 Iowa 195, 199, 73 N.W.2d 78, 80, and cases cited. But we give substantial weight to the findings of the trial court. McKay v. Ruffcorn, supra; Finken v. Porter, 246 Iowa 1345, 1347, 72 N.W.2d 445, 446, and citations. The reason for this is apparent, and it applies with especial force in the case at bar. The trial court has before it many things which do not appear in the printed record: the demeanor of the parties, the appearance of the minor child, and the candor or lack thereof of the witnesses are among the items which come in this category. In the instant case the court had had this matter before it in various phases, and as it developed, for more than three years. It is apparent that it gave the welfare of this small boy its most thorough consideration; the record shows that it acted with the utmost care in making its determination. We recognize the matter is before us for trial anew, and that we must assume the responsibility for making our own decision. But we would likewise be remiss, under the circumstances here, if we did not accord much weight to what the trial court found to be the correct holding. In this connection see our recent discussion in State v. Visser, 249 Iowa 763, 765, 88 N.W.2d 925, 926, 927.

The defendant urges that he has provided adequate food, clothing and shelter for the boy; that he has a considerable affection for him; and that the trouble in the home—the quarreling and dissension—has been removed by the divorce which he procured in November of 1957. These are fair arguments, and they are supported by the facts. But there are other considerations which support the trial court and lead us to the conclusion that its decision was right.

As the court pointed out, the boy Howard, who was the center of most of the trouble in the home, will still be there.

Defendant's attitude that he had done no wrong and was in no manner responsible for the unseemly contentions is not helpful and does not augur well for his control of Howard in the future. The record shows a constant shifting about in the past: from Pennsylvania to Iowa to Minnesota to Texas to California to West Virginia to Iowa; and a constant moving from one living place to another in Mason City during the few years preceding the final hearing. Now it is proposed to take Allen again to California; but there is no assurance he will remain long there in the home of defendant's sister. This nomadic existence must surely be harmful to a small child.

Again, the defendant urges that since he stands in loco parentis to Allen, he has the same rights, duties and responsibilities of a natural parent. If this were true, it would not necessarily determine the issue. Even a natural parent may be deprived of custody when the good of the child requires it. But defendant states the rule too broadly. One important qualification is that one merely standing in the place of a parent may abandon the burdens attendant upon such status at any time. 67 C. J. S., Parent and Child, section 80, pages 808, 809; Menefee v. Chesley, 98 Iowa 55, 59, 66 N.W. 1038, 1040. In McDonald v. Texas Employers' Insurance Assn., Tex. Civ. App., 267 S.W. 1074, 1076, it is said: "* * * the status of one in loco parentis is temporary, and may be abrogated at will by either the person thus standing in loco parentis or by the child." To the same effect is this language from In re Estate of McCardle, 95 Colo. 250, 252, 35 P.2d 850, 851: "It [loco parentis] is not, as argued, to be likened to adoption. The one is temporary in character, the other permanent and abiding." See also Schneider v. Schneider, 25 N. J. Misc. 180, 52 A.2d 564, 566.

The importance of the difference of the status of a natural or adoptive parent, on the one hand, and one merely standing in loco parentis, as in the case before us, is found in the fact that the defendant has made no attempt to adopt Allen during the several years he had custody of the child. He is still free to disavow his responsibility as a parent at any time. We do not say he has such an intent; but the right to do so and the possibility are there.

Viewing the entire picture, we think the trial court was amply justified in holding that the best interest of the child requires that the defendant be permanently deprived of custody, and the boy sent to a child-placing institution. From there he may eventually be placed in the home of suitable adoptive parents, where he will have not only food, clothing and shelter, and love and affection, but security, with freedom from constant shifting about and from the uncertainties and unfavorable influences to which he has heretofore been subjected.—Affirmed.

All JUSTICES concur.