In re The MARRIAGE OF Robert M. CARNEY and Betty A. Carney.

Upon the Petition of Robert M. CARNEY, Appellee,

and Concerning Betty A. CARNEY, Appellant.

No. 54771.

Supreme Court of Iowa.

March 28, 1973.

Alan R. Leff, Iowa City, for appellant.

Bert R. Gillette, Brooklyn, and Fisher, Pickens & Barnes, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS, and McCORMICK, JJ

MASON, Justice.

Betty A. Carney, respondent in a dissolution of marriage proceedings instituted under the provisions of chapter 598, The Code, 1971, appeals from those portions of the decree relating to the award of alimony, child support and division of property. She does not quarrel with that portion of the decree ordering dissolution of the marriage.

In fact, at the commencement of trial the parties stipulated that there had been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. Section 598.17, The Code. The court-appointed conciliator, a psychiatrist, agreed.

The trial court, therefore, decreed dissolution of the marriage, awarded custody of the adopted child, Ruby Marie, to respondent and distributed the assets of the parties.

I. On appeal respondent insists the court failed to provide an equitable division of the assets of the parties in fixing their rights and obligations upon dissolution of the marriage.

This portion of section 598.21, The Code, is pertinent to a determination of this contention:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be *justified*." (Emphasis supplied)

In In re Marriage of Williams, 199 N. W.2d 339, 346 (Iowa 1972), this court defined its function when considering an appeal from the decree of a trial court entered in an action brought under chapter 598, The Code, in this manner:

"In equity it is our duty in a de novo review to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. In re Estate of Cory, 184 N.W.2d 693, 695 (Iowa 1971). While weight will be given to findings of trial court this court will not abdicate its functions as triers de novo on appeal. Baker v. Starkey, 259 Iowa 480, 490, 144 N. W.2d 889, 895."

In an endeavor to ascertain whether the court's decree prescribes an equitable and just distribution of property rights and award of support money, and whether the court appropriately refused to supplement the property settlement with an allowance of alimony, it is necessary to invoke the several criteria enumerated by this court in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), excluding any consideration of evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse. See In re Marriage of Williams, Iowa, 199 N. W.2d 339.

It is noted at the outset the record reveals no indication the trial court gave any consideration to the fault concept in arriving at its determination of the financial or property rights and obligations of the parties.

At the time of their marriage in 1950 both petitioner and respondent were attending Fisk University. Respondent received a Bachelor of Science degree in chemistry in 1951 from Fisk; petitioner graduated from the Meharry Medical College in Nashville, Tennessee in 1958 with a degree in medicine. While petitioner continued with his medical education, respondent earned a substantial portion of their income, working as a secretary, a librarian, a research assistant in physiology and a lab assistant in otology. Petitioner's part-time employment provided additional income.

In the summer of 1958 the parties moved to Cedar Rapids where petitioner performed his medical internship. There, respondent secured employment as a pharmacist assistant at the Mercy Hospital. The following year petitioner opened a general medical practice in Brooklyn, Iowa, where they have continued to reside.

In February 1961 petitioner and respondent adopted a child, Ruby Marie. A foster child named Dennis was brought into the home in 1962. And in September 1963 adoption proceedings were commenced in regard to a third child named Darla. Although Dennis had since returned to the proper authorities, Darla has remained with respondent even though the child has not been adopted.

The extent to which respondent assisted petitioner during the initial years of his practice is a matter of some dispute. Petitioner concedes, however, that respondent continued to perform several bookkeeping services until May of 1966.

In May 1966, petitioner filed a petition for divorce, left the family residence, and moved into a three-room apartment located above his office. Shortly thereafter, the

trial court ordered petitioner to pay respondent $50 per week as temporary support. Yet, the cause did not proceed to trial until December 1969 and the court denied petitioner's request for a divorce in March 1970.

Petitioner then instituted the present dissolution proceedings on July 22, 1970, pursuant to the newly enacted Iowa dissolution of marriage law, now chapter 598, The Code; and the trial court filed its decree January 29, 1971.

Petitioner and respondent were married for twenty years and were 42 and 40 years of age, respectively, at the time of trial. Petitioner submitted a financial statement to the trial court January 11, 1971, listing assets valued at a total of $63,887 and liabilities valued at a total of $36,166. The parties had been able to accumulate a personal residence having an appraised market value of $16,290, subject to a mortgage of $5,378; a 1967 Chevrolet and a 1969 Buick having a combined market value of approximately $4000 with a loan balance of $2985 secured by one automobile; and household goods and furnishings valued by petitioner at $4000.

Petitioner owned his office building having an appraised value of $9260 subject to a mortgage of $7792; office equipment valued at $5000; a drug and supply inventory valued at $2372. His investments were valued at $1500; he had a bank account of $948, collectible accounts receivable of $13,712, and life insurance with a face value of $7355.

Further liabilities of petitioner included accounts payable of $2528; a monthly office operating expense of $1364; personal loan obligations of $3361; personal pledges of $7900; support payments to respondent of $200 per month; estimated state and federal taxes of $1449 and legal fees of $3208. Petitioner listed anticipated expenses for legal fees, court costs and license plate expenses estimated at $7418.

Respondent, on the other hand, had neither assets nor liabilities in her own name. However, the parties remained indebted to the telephone company and Younkers Department Store in Des Moines at the time of trial.

Since the original petition was filed by petitioner in May 1966, he has continued to pay respondent $50 per week as cash support to be used for groceries and personal items. In addition, petitioner met the routine expenses in maintaining the home occupied by respondent and the two girls, including the mortgage payments, real estate taxes, insurance premiums, and trash collections, as well as the telephone, fuel, utilities, television repair and milk bills. He also paid for the children's school supplies and lunches, the maintenance of respondent's automobile (the 1967 Chevrolet) and the gasoline used by respondent.

Respondent testified she has received approximately $1000 from her father since 1966. There is no indication either of the parties, or the children, suffer from any kind of physical impairment or illness.

Petitioner's income tax returns for the years of 1964–1969 were received in evidence as bearing on his earning capacity. Petitioner's net income rose from $7584 in 1964 to $12,132 in 1965; $17,687 in 1966; $19,145 in 1967; $23,952 in 1968; and $26,045 in 1969.

The trial court concluded the reasonable net value of all of the parties' assets was $26,500; petitioner was capable of earning a net income of approximately $22,500 per year; it was apparent both parties could not remain in Brooklyn, and therefore, awarding the realty in kind was not feasible; and respondent's experience and training would enable her to obtain ready employment.

Based on these findings of fact the trial court, after dissolving the marriage, awarded respondent the sum of $17,500 which it found represented 66⅔ percent of

the accumulated net assets, in lieu of all alimony, to be paid as follows:

"a. Respondent shall receive the 1967 Chevroelt station wagon at a value of $1400.00; and all the household goods, furniture and appliances of these parties at a fair and reasonable value thereof of $1500.00; and the total of the two items $2900.00 shall be credited as a payment in kind due under the provisions of this paragraph. Petitioner shall be entitled to his personal belongings and the respondent shall be entitled to her personal belongings and those of the child.

"b. After deducting the foregoing payments in kind to the respondent, the balance due respondent of the property settlement amount in this cause shall be paid to respondent as follows:

"1. $3,000.00 of said balance immediately following the entry of decree in this cause, plus 33 days or March 1, 1971.

"2. $3,000.00 on or before the first anniversary date of the entry of decree in this cause.

"3. $3,000.00 on or before the second anniversary of the date of entry of final decree in this cause.

"4. $3,000.00 on or before the third anniversary of the date of entry of final decree in this cause.

"5. $2600.00 on or before the fourth anniversary of the date of entry of final decree in this cause."

Occupancy of the personal residence of the parties was awarded to petitioner, as was all other property of the parties, including petitioner's office building. He was also required to pay (1) the indebtedness of the parties except respondent's long distance telephone calls; (2) as child support for Ruby the sum of $125 per month; (3) the reasonable expense of Ruby's post-high school education for a period not to exceed four years; (4) a maximum of $500 for respondent's moving expenses;

and (5) respondent's attorney fees of $1000. Finally, the court ordered petitioner to procure a medical and hospitalization insurance policy for the benefit of respondent and Ruby Marie, but required him to pay for only that portion of the premium attributable to Ruby's coverage after one year.

On appeal petitioner emphasizes respondent's alleged misconduct as a justification for the trial court's decree. As previously stated, it is no longer permissible for either a trial court or this court to give any consideration to evidence pertaining to the conduct of the parties in awarding property settlement or an allowance of alimony or support money.

Respondent suggests the trial court's decree is deficient in four respects and seeks these additions and modifications: (1) allowance for the expenses respondent will incur if Darla remains with her; (2) the naming of respondent and Ruby as beneficiaries of a portion of petitioner's life insurance; (3) award of the personal residence of the parties to respondent; and (4) provision for providing alimony.

II. We consider first respondent's contention that the court erred in failing to make an allowance for expenses respondent would incur if Darla remained with her.

At the time of trial Darla was still with respondent. Born March 11, 1963, she had been taken into the home of the parties the following September. Although adoption proceedings were commenced, they were never completed before the present action to terminate the marital relationship was instituted.

Dr. Carney testified, "It is my intention to help provide for the support of Darla just as much as Ruby if my marriage is dissolved."

At the conclusion of petitioner's testimony the court inquired of counsel if it was correct in interpreting the record to the effect that Dr. Carney was making no con-

tention with reference to custody rights. After counsel informed the court, "That's right," the court continued, "All right, and do I interpret that this is on the basis of the doctor's testimony that although the child is not, has not been adopted that he is willing to assume responsibility, if that is his position, if so how does the court enforce it?" Petitioner's counsel advised the court he didn't think the court could enforce it and that this was one of the problems presented.

The trial court concluded in its decree that, "This court has no jurisdiction over Darla Ann Carney, real name, Teresa Marie Nelson, either to award custody or require support payments."

It is necessary in order to resolve respondent's contention in this respect to determine the extent of the trial court's power to provide for maintenance and support of children affected by a judicial termination of a marital relationship.

The only change made in the quoted portion of section 598.21 of the revised act providing for dissolution of marriage procedure which became effective July 1, 1970, was the substitution of the word "justified" for the word "right" which had appeared in former section 598.14 of the Iowa divorce statute.

This language in what is now section 598.17, The Code, is new:

"Dissolution of marriage—evidence. A decree dissolving the marriage may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.

"The court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse."

It is not suggested either statute has made any change with respect to the problem stated.

■ The object and purpose of sections 598.17 and 598.21, The Code, is to authorize the courts in dissolution of marriage proceedings to enforce, after termination of the marital relationship, the legal as well as moral duty of support between parent and child. Yet, the term "children" as used in sections 598.17 and 598.21 has a limited meaning that is commensurate with the common law definition in determining for whom a "parent" must provide support. The trial court, then, may extend such duty of support only to the natural or adopted children of the parties. The court may not order support for a stepchild; nor may one who accepts the responsibility for a child as *in loco parentis* be required to furnish support for that child subsequent to dissolution of the marriage. See Grubb v. Sterrett, 315 F.Supp. 990, 993–994 (N. D.Ind.1970); Fuller v. Fuller, 247 A.2d 767 (D.C.Ct.App.1968), aff'd, Fuller v. Fuller, 135 U.S.App.D.C. 353, 418 F.2d 1189 (1969); Zeller v. Zeller, 195 Kan. 452, 407 P.2d 478, 482; McDowell v. McDowell, 378 S.W.2d 814, 815–816 (Ky. 1964); Taylor v. Taylor, 58 Wash.2d 510, 364 P.2d 444. See generally, State ex rel. Gilman v. Bacon, 249 Iowa 1233, 1238, 91 N.W.2d 395, 398–399; Duvall v. Duvall, 215 Iowa 24, 30, 244 N.W. 718, 720–721.

■ At common law a father is primarily liable for the support of his children. However, in this state by reason of section 597.14, The Code, which provides the reasonable and necessary expenses of the family are chargeable upon the property of both husband and wife, the view prevails that the same legal obligation rests upon both husband and wife, not necessarily equally but proportionately according to their ability and circumstances. Addy v. Addy, 240 Iowa 255, 264, 36 N.W.2d 352, 358; Dworak v. Dworak, 195 N.W.2d 740, 743 (Iowa 1972).

■ While judicial termination of the marital relationship and the consequent powers of courts granting dissolution of marriages to make provisions for the custody and maintenance of minor children is of purely statutory creation, yet a judgment for support is in effect substituted for the father's common law liability of support. Again, the court is authorized under termination of the marital relationship to extend the obligation imposed under either the common law or section 597.14 only to the natural or adoptive children of the parties. But, this authority does not empower the court to order support for a stepchild; nor may one who has accepted the responsibility for a child as *in loco parentis* be required to furnish support for that child subject to dissolution of the marriage.

The status of one *in loco parentis* was described in Niewiadomski v. United States, 159 F.2d 683, 686 (6 Cir. 1947), cert. denied, 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859, in the following manner:

"The term 'in loco parentis,' according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties."

In this connection see also State ex rel. Gilman v. Bacon, 249 Iowa at 1238, 91 N.W.2d at 399 and In re Adoption of Cheney, 244 Iowa 1180, 1185, 59 N.W.2d 685, 687, dealing with the status of *in loco parentis*.

It is true petitioner treated Darla during the marriage as his own and at trial indicated his willingness to contribute voluntarily, but not under a court order, to the support of Darla. This does not demonstrate that he intends to continue permanently in the role of parent. Petitioner is still free to disavow his responsibility as a parent at any time. We do not say he has

such an intent; but the right to do so and the possibility are there.

Even if it were to be determined that Dr. Carney stood *in loco parentis* to Darla during his marriage to respondent, the trial court was without authority upon dissolution of the marital relationship to make any provision for the continued support of Darla by petitioner.

The court did not err in failing to make an allowance for the support of Darla.

■ Respondent does not seriously contend otherwise. Nevertheless, she argues Darla's being in the home since 1963 even though adoption proceedings had never been finalized was a factor to be taken into consideration by the court in determining respondent's needs when fixing the amount of alimony. We do not agree. If we were to adopt respondent's suggestion we would be doing indirectly what we have said in light of the authorities cited cannot be done directly.

III. We next consider respondent's contention that the court erred in failing to order petitioner to make periodic payments of alimony.

As indicated, since the 1966 divorce action was instituted by petitioner, he had been paying the sum of $50 per week in addition to the routine expenses in maintaining the house occupied by respondent and the two girls. In 1966 his net income was $17,687. In 1969 it had increased to $26,045. However, there was no increase in the weekly payments made to respondent.

Dr. Carney's net taxable income from his medical practice has increased from $7584 in 1964 to $26,045 reported in 1969. His income for 1970 had not yet been ascertained at the time of trial. Petitioner testified that expenses incurred in the operation of his office would increase over $6000 in 1970. This was due in part he said to the employment of another nurse or receptionist and the purchase of some new office machines.

The court in arriving at a net worth figure of $26,250 evidently included in the liabilities listed pledges made by petitioner of which $7210 was payable over a period of up to nine years.

There is every reason to expect under the evidence presented by this record that petitioner's capacity to earn is on the upswing. Respondent, on the other hand, has not held a job requiring a chemistry background since her graduation in 1951 and has not been employed outside the home since 1959 except for the help rendered petitioner at the office. The extent to which she will now be able to obtain employment and contribute to her needs is indefinite. When the installment payments of the property settlement are completed respondent will be 45 years of age.

When the trial court's distribution of the assets of the parties is reviewed in the light of those permissible factors now remaining in Schantz v. Schantz, 163 N. W.2d at 405, the conclusion is compelled that the decree should be amended by requiring petitioner to pay, in addition to the $17,500 awarded respondent as a division of property, the sum of $350 per month as alimony commencing with the date of the trial court's decree in this matter and continuing thereafter in like monthly installments during the lifetime of both parties so long as respondent remains single. As to the distinction between division of property, alimony and child support see Knipfer v. Knipfer, 259 Iowa 347, 351–353, 144 N.W.2d 140, 142–144.

Petitioner shall receive credit on this obligation to pay monthly installments of alimony as herein ordered for such sums as he has advanced in compliance with the order of a panel of this court dated March 13, 1971 directing him to pay the ordinary household expenses during pendency of this appeal.

The other provisions in said decree relating to the division of property are not unreasonable or unjust and those awards are affirmed.

IV. Respondent's application for an allowance for attorney fees for services rendered her on this appeal has been submitted with the appeal.

Respondent's counsel has been paid $1200 for all services in the trial court.

Counsel has filed an affidavit as a part of respondent's brief and argument and a supplementary affidavit setting forth an itemized statement showing the dates and time involved for services rendered with money advanced for printing of record, briefs and arguments.

From the itemized statement is is apparent counsel has spent a great deal of time preparing this appeal.

The cost of the transcript, printing of record and printing of brief and argument listed in counsel's affidavit shall be taxed as court costs after crediting said amount with the sum of $250 advanced by petitioner for suit money.

Costs shall be taxed against petitioner.

Respondent should be allowed $1500 toward her attorney fees for services on this appeal. Judgment shall be entered in the trial court for this additional amount.

With directions to the trial court to modify its decree by providing for alimony payments as herein ordered and entering judgment for the allowance of attorney fees, the case is therefore—Affirmed in part; reversed in part; and remanded with directions.