Eugene Harrison **WHITLOCK**, Plaintiff,

v.

**IOWA DISTRICT COURT FOR FAYETTE COUNTY,**
Defendant.

No. 92–878.

Supreme Court of Iowa.

March 24, 1993.

Rehearing Denied April 19, 1993.

John D. Standafer of the Donohue Law Office, West Union, for plaintiff.

Dennis G. Larson and Chris A. Frana of the Larson Law Office, Decorah, for defendant.

Bonnie J. Campbell, Atty. Gen., John Parmeter, Sp. Asst. Atty. Gen., Kay Delafield, Asst. Atty. Gen., and Stephen J. Belay, Asst. County Atty., for amicus curiae State of Iowa.

Considered by LARSON, P.J., and SCHULTZ, LAVORATO, SNELL and ANDREASEN, JJ.

SNELL, Justice.

The issue presented by this case is whether plaintiff who is not the biological father of Michelle Whitlock is legally liable to pay temporary child support for her during the pendency of his dissolution of marriage proceeding. We determine he is liable for that support.

Eugene and Georgia Whitlock were married on October 7, 1978. One child was born during the marriage, Michelle Whitlock. The parties agree and the trial court conclusively determined that Eugene is not the father of Michelle. This is because Eugene, who was in the United States Navy, left his wife for shipboard duty in San Diego at the end of June 1982. He did not see his wife again until after the baby was born on May 7, 1983. Georgia Whitlock told Eugene that he was not the biological father, and she has named the true biological father in these proceedings.

The parties dispute whether Eugene consented to the placement of his name as the father of Michelle on her birth certificate. In any event, Eugene is named as her father on the birth certificate, and he proceeded to treat Michelle as his daughter for the next nine years. Eugene claimed Michelle as a dependent for military benefits while he was in the service and claimed her as a dependent on his income tax returns. Georgia says that the biological father was never asked to contribute support for Michelle because Eugene said that he wanted to be her father.

Eugene acknowledged that when asked he would say that Michelle was his daughter. Eugene stated that he did not use the word stepdaughter in introductions. With family, however, he would state that the child was not his, that she was more like a stepdaughter.

On November 20, 1991, Eugene filed a petition for dissolution of marriage. Georgia answered and filed an affidavit of financial status. The affidavit contained a request for temporary child support for Michelle.

Also during this time, the State of Iowa filed a notice of support debt which is also contested by Eugene. The State then filed a petition for judicial review in the district court. The district court consolidated the dissolution of marriage action and the State's action for support debt.

At the hearing, Eugene stated that he supported Michelle as his daughter for nine years and acted as her father. Although Eugene voluntarily supported Michelle for nine years, he feels that because he is not her biological father, he is not obligated to support her and should not be forced to make payments of child support to her. He has not made any support payments for Michelle since the dissolution action was filed.

Eugene challenges the legality of the temporary support order in his petition for writ of certiorari. We granted the writ to answer this question. The Iowa Attorney General submitted a brief as amicus curiae, having an interest in enforcing child support debts under Iowa Code chapter 252C (1991).

The issue came before the court on a motion for partial summary judgment. The court specifically found that Eugene is not the biological father of Michelle. Nevertheless, the court held that Eugene was liable for temporary child support because this fact was not controlling. Temporary child support in the amount of $56.38 per week was set. Further order was made that the establishment of temporary child support would not be admissible with regard to whether Eugene would be liable for permanent child support.

Certiorari lies when the district court has exceeded its jurisdiction or has acted illegally. Iowa R.Civ.P. 306; *State v. West*, 320 N.W.2d 570, 573 (Iowa 1982); *Hadjis v. Iowa Dist. Court*, 275 N.W.2d 763, 765 (Iowa 1979). Illegality exists. when the findings on which the court has based its conclusions of law do not have substantial evidentiary support or when the court has not applied the proper rule of law. *Iowa Freedom of Info. Council v. Wifvat*, 328 N.W.2d 920, 922 (Iowa 1983); *Hightower v. Peterson*, 235 N.W.2d 313, 316 (Iowa 1975).

We proceed as directed by Iowa Rule of Civil Procedure 316:

> Unless otherwise specially provided by statute, the judgment on certiorari shall be limited to sustaining the proceedings below, or annulling the same wholly or in part, to the extent that they were illegal or in excess of jurisdiction, and prescribing the manner in which either party may proceed further, nor shall such judgment substitute a different or amended decree or order for that being reviewed.

The sole issue presented at this juncture is the legality of the order for temporary child support. Authority for the court's order must come from Iowa Code chapter 598, Dissolution of Marriage, and chapter 252C, Child Support Debts. Respondent, Georgia Whitlock, relies on section 598.11, which states in part:

> The court may order either party to pay the clerk a sum of money for the separate support and maintenance of the other party and the children and to enable such party to prosecute or defend the action.

Georgia points out that this statute refers to a "party" to the dissolution suit rather than to a "parent" of children affected by the action. She claims a broader group designation is intended.

Eugene's argument that he should not be legally ordered to support a child not his is heavily based on several of our prior cases to which he analogizes. In *In re Marriage of Carney*, 206 N.W.2d 107, 112–13 (Iowa 1973), we said:

The object and purpose of sections 598.17 and 598.21, The Code, is to authorize the courts in dissolution of marriage proceedings to enforce, after termination of the marital relationship, the legal as well as moral duty of support between parent and child. Yet, the term "children" as used in sections 598.17 and 598.21 has a limited meaning that is commensurate with the common law definition in determining for whom a "parent" must provide support. The trial court, then, may extend such duty of support only to the natural or adopted children of the parties. The court may not order support for a stepchild; nor may one who accepts the responsibility for a child as *in loco parentis* be required to furnish support for that child subsequent to dissolution of the marriage.

. . . .

While judicial determination of the marital relationship and the consequent powers of courts granting dissolution of marriages to make provisions for the custody and maintenance of minor children is of purely statutory creation, yet a judgment for support is in effect substituted for the father's common law liability of support. Again, the court is authorized under termination of the marital relationship to extend the obligation imposed under either the common law or section 597.14 only to the natural or adoptive children of the parties. But, this authority does not empower the court to order support for a stepchild; nor may one who has accepted the responsibility for a child as *in loco parentis* be required to furnish support for that child subject to dissolution of the marriage.

The status of one *in loco parentis* was described in *Niewiadomski v. United States*, 159 F.2d 683, 686 (6 Cir.1947), *cert. denied*, 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859, in the following manner:

> "The term 'in loco parentis' according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going

through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties."

. . . .

It is true petitioner treated Darla during the marriage as his own and at trial indicated his willingness to contribute voluntarily, but not under a court order, to the support of Darla. This does not demonstrate that he intends to continue permanently in the roll of parent. Petitioner is still free to disavow his responsibility as a parent at any time. We do not say he has such an intent; but the right to do so and the possibility are there.

Even if it were to be determined that Dr. Carney stood *in loco parentis* to Darla during his marriage to respondent, the trial court was without authority upon dissolution of the marital relationship to make any provision for the continued support of Darla by petitioner.

We followed *Carney* with language approving this holding in *Mears v. Mears*, 213 N.W.2d 511, 518 (Iowa 1973):

The authority of the court *under* either section 598.14, The Code, 1966, set out supra, or section 598.17, The Code, 1971, to make provisions for maintenance of minor children extends only to the natural or adoptive children of the parties and does not empower the court to order support for a stepchild. *In re Marriage of Carney*, 206 N.W.2d at 113. This is also true when the court is considering a petition for modification of child support provisions.

Similarly, our court of appeals followed the same principle in *In re Marriage of Holcomb*, 471 N.W.2d 76 (Iowa App.1991). There, the court rejected claims by a mother for child support from her husband, who was not the father, based on equitable estoppel, implied contract, equitable adoption, virtual adoption, and adoption by contract. Citing a New Jersey case, the court said:

The New Jersey court, while finding principles of equitable estoppel could be used to collect child support from a stepparent, rejected in their consideration the

fact the stepparent had adopted a close relationship with the children, nurtured them into a family unit with himself as the father, and had the children call him "daddy." *See Miller v. Miller*, 97 N.J. 154, 478 A.2d 351 (1984). The court said to hold otherwise would create enormous policy difficulties. The court reasoned a stepparent who tried to create a warm family atmosphere with his or her stepchildren would be penalized by being forced to pay support for them in the event of a divorce, while a stepparent who refused to have anything to do with his or her stepchildren beyond supporting them would be rewarded by not having to pay support in the event of a divorce. *See Miller*, 97 N.J. at 168, 478 A.2d at 358. The fact that Robert had a loving, caring and supportive relationship with Shane does not justify finding Robert has an obligation to support Shane following the dissolution of this marriage. To use the relationship to impose a support obligation would discourage stepparents from establishing close and loving relationships with stepchildren.

*Holcomb*, 471 N.W.2d at 79.

Georgia's position relies in large measure on equitable arguments and two Michigan cases that found a child support obligation arising out of equitable or promissory estoppel principles. *See Nygard v. Nygard*, 156 Mich.App. 94, 401 N.W.2d 323 (1986); *Johnson v. Johnson*, 93 Mich.App. 415, 286 N.W.2d 886 (1979). Support is also sought from *Bergman v. Carson*, 226 Iowa 449, 284 N.W. 442 (1939). In that case, a right of inheritance was successfully established on an adoption by estoppel theory by proof of an understanding and agreement between a father and mother that the father would adopt her son.

Although the authorities cited by both parties are analogous, we again note the narrowness of the issue now before us. The trial court ruled only on the question of temporary child support, leaving to further development at trial the facts and legal issues attached to a permanent child support question. As such, we believe there is significance to be drawn from the

use of the word "party" in section 598.11. The purpose of that section is to authorize temporary orders of support during the pendency of the dissolution proceedings. Those orders of necessity are based on preliminary information that may or may not be substantiated on further hearing. Final dispositions and support orders are statutorily authorized by section 598.21. Section 598.21(4)(a) uses the word "parent" in referring to child support that would be permanent. It states:

> Upon every judgment of annulment, dissolution, or separate maintenance, the court may order either parent or both parents to pay an amount reasonable and necessary for supporting a child.

The preliminary nature of temporary child support is further indicated in *Eastman v. Eastman*, 159 Iowa 167, 140 N.W. 400 (1913). In that action for separate maintenance, the court authorized temporary alimony, observing it would not investigate the merits further than to examine the pleadings to see that a meritorious claim was alleged.

It is apparent from the facts already established that there is a basis for ordering support for Michelle by Eugene at this juncture. We hold that the district court had jurisdiction and legal authority to order temporary child support pursuant to Iowa Code section 598.11.

**WRIT ANNULLED.**